UNITED STATES DISTRICT COURT
DISTRICT OF MARYLAND

ALFRED SHINARD-BEY,

    Plaintiff,

    v.

ASRESAHEGN GETACHEW,
*Medical Director of Corizon*, and
JANETTE CLARK,

    Defendants.

Civil Action No. TDC-22-0757

**MEMORANDUM OPINION**

Self-represented Plaintiff Alfred Shinard-Bey, a state inmate currently incarcerated at North Branch Correctional Institution ("NBCI") in Cumberland, Maryland, has filed this civil action pursuant to 42 U.S.C. § 1983 and the Americans with Disabilities Act of 1990 ("ADA"), 42 U.S.C. §§ 12101–12213 (2018). In the Complaint, Shinard-Bey asserts that Defendants Dr. Asresahegn Getachew and Janette Clark failed to provide proper medical care following a surgery and when he developed a rash or infection, in violation of the Eighth Amendment to the United States Constitution and the ADA. Shinard-Bey seeks a declaratory judgment, injunctive relief, and monetary damages.

Defendants have filed a Motion to Dismiss or Alternatively for Summary Judgment, which Shinard-Bey opposes. Having reviewed the submitted materials, the Court finds that no hearing is necessary. *See* D. Md. Local R. 105.6. For the reasons set forth below, Defendants' Motion will be GRANTED.

**BACKGROUND**

In his Complaint, Shinard-Bey alleges that he suffers from a spinal cord injury, bladder dysfunction, and lower bowel dysfunction, and that he "walks with a gait." Compl. ¶ 8, ECF No. 1. He states that on January 2, 2022, while at NBCI, he submitted an Administrative Remedy Procedure complaint ("ARP") after he did not receive adequate medical care following surgery. According to Shinard-Bey, he developed rashes and submitted several sick call requests before he was seen by medical staff, at which point he was told that he had a Methicillin-resistant Staphylococcus aureus ("MRSA") infection. He faults Defendants for failing to "treat, clean, and evaluate his surgery site, rash, and medication" and claims that he suffered from sleep deprivation as a result. *Id.* ¶¶ 18, 21.

**I.  WCI Care**

According to Defendants, Shinard-Bey underwent surgery to his lumbar spine on November 5, 2021 and was discharged to the Western Correctional Institution ("WCI") infirmary the same day. Upon his arrival at WCI, he was seen by Defendant Janette Clark, a nurse practitioner at WCI. Clark noted that Shinard-Bey was able to stand from a wheelchair to get into bed, and that he reported moderate to severe post-operative pain but denied shortness of breath or chest heaviness. Clark reminded Shinard-Bey to do ankle foot pumps, take deep breaths, and walk in his cell, and she noted that Shinard-Bey could resume taking Indomethacin (a nonsteroidal anti-inflammatory drug) in seven days. Clark also prescribed Keflex (an antibiotic), Lovenox (an anticoagulant medication), Dexamethasone (a steroid medication), Neurontin (an anti-seizure medication used to treat nerve pain, also known as Gabapentin), and Acetaminophen-codeine (a narcotic pain medication), and she ordered wound care and monitoring. Because Neurontin was

2

unavailable at the WCI infirmary at that time, Clark ordered a three-day supply of Acetaminophen-codeine.

On November 6, 2021, Clark again saw Shinard-Bey at the infirmary. At that time, his wound was healing well, and Shinard-Bey was able to slowly rise to a standing position, though he reported left leg numbness. Clark discharged Shinard-Bey to NBCI and told him that he should wash the wound area by himself with soap and water, using the pads of his fingers, and should rinse and pat it dry. Clark requested a surgical follow-up visit and directed Shinard-Bey to contact an NBCI medical provider in two to three weeks, or sooner if needed.

Clark did not see Shinard-Bey following his discharge from the WCI infirmary. Clark does not treat patients at NBCI, was not involved with Shinard-Bey's care after his return to NBCI, and had no knowledge of his subsequent complaints.

## II. NBCI Care

Defendant Dr. Getachew, the Regional Medical Director at NBCI and WCI, evaluates patients and reviews requests for certain medications, but he does not review patients' health services requests, schedule provider appointments, or review requests for specialty treatment. On November 9, 2021, Dr. Getachew reviewed and approved prescriptions for Shinard-Bey for Lovenox, Dexamethasone, and Neurontin.

On November 11, 2021, a nurse at NBCI saw Shinard-Bey for complaints of a blood clot from his surgery. The nurse noted that Shinard-Bey's post-operative pain was being managed. Shinard-Bey began receiving Neurontin that same day, following discontinuation of the Acetaminophen-codeine prescription.

On November 12, 2021, Dr. Getachew requested physical therapy to improve the surgical outcome as to Shinard-Bey's chronic back pain, pursuant to the recommendation of Shinard-Bey's

3

neurosurgeon. On November 18, 2021, Shinard-Bey had a follow up appointment with his neurosurgeon at University of Pittsburgh Medical Center Western Maryland. At that time, Shinard-Bey's surgical incision appeared to be healing well with no redness, swelling, or discharge. Shinard-Bey reported numbness, tingling, and pain in his left leg. The neurosurgeon directed him to continue taking Neurontin twice daily until his follow-up appointment in one month. Because he concluded that Shinard-Bey needed a cell with handrails to assist him in using the toilet, the neurosurgeon stated that a request would be made for Shinard-Bey to receive such a handicap cell.

On November 28, 2021, Shinard-Bey attended a scheduled medical visit with Dr. Joginder Mehta at NBCI. At that time, Shinard-Bey's back appeared to be well-healed with no inflammation or swelling, and Shinard-Bey was walking on his own without any problems. Dr. Mehta continued Shinard-Bey's medication and scheduled a chronic care appointment to occur three months later.

On November 29, 2021, Shinard-Bey attended a telemedicine appointment with Dr. Getachew as a follow-up to his lumbar surgery. Dr. Getachew reiterated the neurosurgeon's instructions regarding medication and scheduled another appointment in one month. Dr. Getachew also reviewed the neurosurgeon's notes and concluded that a handicap cell was not medically necessary because Shinard-Bey was not wheelchair-bound, did not need assistance with mobility, and was able to walk on his own.

On December 2, 2021, Shinard-Bey underwent a physical therapy evaluation. At that time, Shinard-Bey's incisional area was healing well. The result of the evaluation was a recommendation for 10 sessions of physical therapy to increase strength in his hip and to stabilize his gait pattern.

On December 6, 2021, after submitting a sick call request, Shinard-Bey reported to the NBCI medical unit with complaints of leg pain. Upon evaluation, a nurse noted slight swelling to the surgical site. Shinard-Bey also expressed concern about a possible blood clot but exhibited no evidence of it. The nurse made a referral for Shinard-Bey to see a physician or other medical provider.

On December 7, 2021, Shinard-Bey submitted another sick call request with complaints of a rash and soreness in his leg consisting of what felt like a blood clot. He was seen by a nurse that day.

Shinard-Bey returned to the medical unit on December 14, 2021, with complaints of bumps on his left leg that began to appear a week before, pain in his left knee, and swelling in his back. At that time, a nurse, Jessica Coffman, noted that his lower back incision was slightly inflamed and tender to the touch. She made a referral for Shinard-Bey to see a physician or other medical provider for evaluation and treatment.

On December 23, 2021, Shinard-Bey submitted a sick call request about the rash on his leg and swelling and pain in his back. That same day, he attended a support counseling session with Misty Guthrie, a social worker. At that time, Shinard-Bey expressed concern about swelling in his back and a rash that would not go away. Guthrie contacted a nurse about the issue, and Shinard-Bey was immediately taken to the medical room, where he was again seen by Coffman. Upon examination, Coffman found what appeared to be non-inflamed papules and dryness running from Shinard-Bey's leg to his groin. Coffman also noted that the incision on Shinard-Bey's back was less swollen as compared to his last visit. Coffman found no signs of infection but again made a referral for Shinard-Bey to see a medical provider for further evaluation and treatment.

5

On December 26, 2021, Shinard-Bey submitted another sick call request with complaints about the rash on his leg and a swollen and painful back. The request was reviewed, but it does not appear that Shinard-Bey was brought in for a sick call visit. Shinard-Bey has acknowledged that at certain times during this time frame, NBCI was broadcasting within the prison that the medical unit was seeing only patients with symptoms of COVID-19.

On January 2, 2022, Shinard-Bey submitted his ARP in which he asserted that following his surgery, the medical staff failed to provide any wound care cleaning, causing him to develop a rash on the surgery site, which he believed was infected. Shinard-Bey asserted that he submitted five sick calls that went unanswered between November 6 and December 28, 2021, and he had not been seen by a doctor for the rash.

On January 15, 2022, Shinard-Bey submitted another sick call request in which he again complained about the rash, stating that it started on his back, had since resolved in that location, but had moved to his left thigh and left groin. On January 17, 2022, Adane T. Negussie, a physician's assistant, evaluated Shinard-Bey, and noted multiple lesions appearing as blisters on his left thigh, as well as a small open wound, that appeared consistent with shingles. Negussie ordered Valtrex, topical pain medication, and a wound culture. Dr. Getachew approved the request for Valtrex and topical pain medication.

On January 28, 2022, Shinard-Bey's wound culture results came back positive for MRSA. Dr. Mehta prescribed an oral antibiotic, and Shinard-Bey was directed to keep his wound clean and dry. According to Dr. Getachew, MRSA is a type of bacteria that is resistant to several antibiotics. It can live on the skin without causing problems but can also cause minor skin infections that usually heal on their own if the wound is kept clean and bandaged. According to

Dr. Getachew, Shinard-Bey's MRSA infection is not a sign that he did not receive adequate post-surgery treatment.

On February 12, 2022, Shinard-Bey submitted another sick call request in which he complained that the rash was still present and that another rash was appearing on his back. During a scheduled medical visit on February 14, 2022, Negussie noted that Shinard-Bey no longer had symptoms of MRSA and ordered refills for Shinard-Bey's medications. On February 25, 2022, Dr. Mehta visited Shinard-Bey in his cell in response to a complaint about continued MRSA in his left groin area. On examination, Shinard-Bey had no redness, open wound, swelling, mass, tenderness, or rash, but he complained of a burning sensation on his left thigh. Noting that Shinard-Bey had completed a 10- or 11-day course of antibiotic treatment ending on February 8, 2022, Dr. Mehta prescribed Calmoseptine, an ointment for the skin irritation.

Meanwhile, after refusing to attend his first two physical therapy sessions scheduled for February 17 and 22, 2022, Shinard-Bey attended physical therapy on February 24, 2022 and reported that he did not have lower back pain but had tingling and numbness from his left knee to his left foot that at times was very severe, with a rating of 10/10. During that session, Shinard-Bey's skin integrity was intact.

Between February 27, 2022 and June 16, 2022, Dr. Getachew had several visits with Shinard-Bey for complaints regarding his left knee. Shinard-Bey continued physical therapy through May 2022. He also continued to assert that he had a rash in May 2022.

### III. Procedural History

On February 8, 2022, the Warden responded to Shinard-Bey's ARP and found it meritorious in part in that the medical staff had failed to evaluate and treat in a timely manner the rash that resulted in an infection. The Warden informed Shinard-Bey that medical staff would be

7

educated on follow-up procedures. The Warden did not conclude that Shinard-Bey received inadequate wound care and noted that Shinard-Bey's discharge instructions directed him to wash the surgical site twice daily with soap and water. Shinard-Bey's appeal of this determination to the Commissioner of Correction was denied.

On March 29, 2022, Shinard-Bey filed his Complaint in this case alleging that Dr. Getachew and Clark violated his rights under the Eighth Amendment and the ADA by providing untimely and inadequate medical care following his surgery and in relation to his MRSA infection. He seeks compensatory and punitive damages, a declaratory judgment, and injunctive relief, including assignment to a medical or single cell with handrails around the bed and toilet.

## DISCUSSION

In their Motion, Defendants seek dismissal of the Complaint under Federal Rule of Civil Procedure 12(b)(6) or summary judgment under Rule 56 on the grounds that: (1) Title II of the ADA does not apply to private contractors or to claims of the denial of medical treatment; (2) Shinard-Bey fails to state a deliberate indifference claim against Defendants; (3) the record evidence demonstrates that Defendants were not deliberately indifferent to Shinard-Bey's needs; and (4) Shinard-Bey is not entitled to injunctive relief.

### I.     Legal Standards

To defeat a motion to dismiss under Rule 12(b)(6), the complaint must allege enough facts to state a plausible claim for relief. *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). A claim is plausible when the facts pleaded allow "the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* Legal conclusions or conclusory statements do not suffice. *Id.* A court must examine the complaint as a whole, consider the factual allegations in the complaint as true, and construe the factual allegations in the light most favorable to the

plaintiff. *Albright v. Oliver*, 510 U.S. 266, 268 (1994); *Lambeth v. Bd. of Comm'rs of Davidson Cnty.*, 407 F.3d 266, 268 (4th Cir. 2005). A self-represented party's complaint must be construed liberally. *Erickson v. Pardus*, 551 U.S. 89, 94 (2007). However, "liberal construction does not mean overlooking the pleading requirements under the Federal Rules of Civil Procedure." *Bing v. Brivo Sys., LLC*, 959 F.3d 605, 618 (4th Cir. 2020).

Defendants have attached several exhibits to their Motion. Typically, when deciding a motion to dismiss under Rule 12(b)(6), the Court considers only the complaint and any documents attached to that pleading. *Sec'y of State for Defence v. Trimble Navigation Ltd.*, 484 F.3d 700, 705 (4th Cir. 2007). Rule 12(d) requires courts to treat such a motion as a motion for summary judgment where matters outside the pleadings are considered and not excluded. Fed. R. Civ. P. 12(d). Before converting a motion to dismiss to one for summary judgment, courts must give the nonmoving party "a reasonable opportunity to present all the material that is pertinent to the motion." *Id.* "Reasonable opportunity" has two requirements: (1) the nonmoving party must have some notice that the court is treating the Rule 12(b)(6) motion as a motion for summary judgment, and (2) the nonmoving party "must be afforded a reasonable opportunity for discovery" to obtain information essential to oppose the motion. *Gay v. Wall*, 761 F.2d 175, 177 (4th Cir. 1985).

Here, the notice requirement has been satisfied by the title of Defendants' Motion. To show that a reasonable opportunity for discovery has not been afforded, the nonmoving party must file an affidavit or declaration under Rule 56(d), or an equivalent filing, explaining why "for specified reasons, it cannot present facts essential to justify its opposition." Fed. R. Civ. P. 56(d); *see Harrods Ltd. v. Sixty Internet Domain Names*, 302 F.3d 214, 244–45 (4th Cir. 2002). Shinard-Bey has not asserted that he needs discovery in order to address the Motion. The Court will thus

9

construe Defendants' Motion as a motion for summary judgment for purposes of the arguments requiring consideration of the submitted declarations and exhibits.

Under Rule 56(a), the Court grants summary judgment if the moving party demonstrates that there is no genuine issue as to any material fact, and that the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(a); *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986). In assessing the Motion, the Court views the facts in the light most favorable to the nonmoving party, with all justifiable inferences drawn in its favor. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 255 (1986). The Court may rely only on facts supported in the record, not simply assertions in the pleadings. *Bouchat v. Balt. Ravens Football Club, Inc.*, 346 F.3d 514, 522 (4th Cir. 2003). A fact is "material" if it "might affect the outcome of the suit under the governing law." *Anderson*, 477 U.S. at 248. A dispute of material fact is "genuine" only if sufficient evidence favoring the nonmoving party exists for the trier of fact to return a verdict for that party. *Id.* at 248–49.

## II.    ADA

Shinard-Bey alleges that Defendants have violated the ADA, most likely in relation to the failure to provide a cell with handrails. Title II of the ADA provides that "no qualified individual with a disability shall, by reason of such disability, be excluded from participation in or be denied the benefits of the services, programs, or activities of a public entity, or be subjected to discrimination by any such entity." 42 U.S.C. § 12132. To establish a violation of Title II of the ADA, plaintiffs must show that they: (1) have a disability; (2) were either excluded from participation in or denied the benefits of a public entity's services, programs, or activities for which they were otherwise qualified; and (3) the exclusion, denial of benefits, or discrimination was by reason of the disability. *See Nat'l Fed'n of the Blind v. Lamone*, 813 F.3d 494, 502–03 (4th Cir.

10

2016). "Discrimination" barred by Title II includes "a failure to make reasonable modifications" that are "necessary" to provide a disabled individual with "full and equal enjoyment" of the facility's services. *Halpern v. Wake Forest Univ. Health Scis.*, 669 F.3d 454, 461 (4th Cir. 2012). Title II of the ADA applies to state prisons. *See Penn. Dep't of Corr. v. Yeskey*, 524 U.S. 206, 210 (1998) (stating that "[s]tate prisons fall squarely within the statutory definition of 'public entity . . . .'").

Here, Defendants are medical personnel who work for a private company under contract to provide medical services at NBCI. For an ADA claim, however, the proper defendant is the public entity itself. *See* 42 U.S.C. § 12131(1) ("[t]he term 'public entity' means . . . any State or local government [or] any department, agency, special purpose district, or other instrumentality of a State or States or local government"); *Baird ex rel. Baird v. Rose*, 192 F.3d 462, 471 (4th Cir. 1999) (upholding the dismissal of ADA claims against individuals because Title II recognizes a cause of action only against public entities, not private individuals); *Green v. City of New York*, 465 F.3d 65, 79 (2d Cir. 2006) (finding that a private hospital was not subject to ADA liability under Title II even if it performed services pursuant to a contract with the city); *Vinson v. Thomas*, 288 F.3d 1145, 1156 (9th Cir. 2002) (joining the Fifth, Eighth, and Eleventh Circuits in holding that "a plaintiff cannot bring an action under 42 U.S.C. § 1983 against a State official in her individual capacity to vindicate rights created by Title II of the ADA"). Because Defendants are not public entities and are not even employed by such an entity, Defendants' Motion will be granted as to the ADA claim.

### III.   Eighth Amendment

Shinard-Bey also asserts Eighth Amendment claims based on the alleged failure to provide adequate post-surgical care and treatment for his skin condition. The Eighth Amendment protects

prison inmates from "cruel and unusual punishments." U.S. Const. amend. VIII. In order to state an Eighth Amendment claim arising from inadequate medical care, a plaintiff must demonstrate that the actions of the defendants or their failure to act amounted to deliberate indifference to a serious medical need. *See Estelle v. Gamble*, 429 U.S. 97, 106 (1976). Deliberate indifference to a serious medical need requires proof that, objectively, the prisoner plaintiff was suffering from a serious medical need and that, subjectively, the prison staff was aware of the need for medical attention but failed to either provide it or ensure that the needed care was available. *See Iko v. Shreve*, 535 F.3d 225, 241 (4th Cir. 2008). Objectively, the medical condition at issue must be serious. *Hudson v. McMillan*, 503 U.S. 1, 9 (1992). A medical condition is serious when it is "so obvious that even a lay person would easily recognize the necessity for a doctor's attention." *Iko*, 535 F.3d at 241 (citation omitted).

As for the subjective component, "[a]n official is deliberately indifferent to an inmate's serious medical needs only when he or she subjectively 'knows of and disregards an excessive risk to inmate health or safety.'" *Jackson v. Lightsey*, 775 F.3d 170, 178 (4th Cir. 2014) (quoting *Farmer v. Brennan*, 511 U.S. 825, 837 (1994)). "[I]t is not enough that an official should have known of a risk; he or she must have had actual subjective knowledge of both the inmate's serious medical condition and the excessive risk posed by the official's action or inaction." *Id.* (citations and emphasis omitted). "[M]any acts or omissions that would constitute medical malpractice will not rise to the level of deliberate indifference." *Id.* Thus, "[d]eliberate indifference is more than mere negligence, but less than acts or omissions done for the very purpose of causing harm or with knowledge that harm will result." *Scinto v. Stansberry*, 841 F.3d 219, 225 (4th Cir. 2016) (citations and internal alterations omitted). Under this standard, a mere disagreement between an inmate and a physician over the appropriate level of care does not establish an Eighth Amendment

violation absent exceptional circumstances. *Id.* Moreover, even if the requisite subjective knowledge is established, an official may avoid liability if the official "responded reasonably to the risk, even if the harm ultimately was not averted." *See Farmer v. Brennan*, 511 U.S. 825, 844 (1994).

### A. Post-Surgical Care

The record does not support Shinard-Bey's claim that Defendants were deliberately indifferent to his medical needs following surgery. As to Clark, upon Shinard-Bey's arrival at the WCI infirmary on November 5, 2021, she promptly examined him and ordered necessary medication. Clark saw Shinard-Bey again the following day, before he returned to NBCI. At that time, Clark noted that Shinard-Bey's wound was healing, and she instructed him to wash the wound area by himself with soap and water. Moreover, Clark requested a surgical follow-up and directed Shinard-Bey to contact an NBCI medical provider if needed, as she was not assigned to treat patients at NBCI. She prescribed multiple forms of medication, including pain medication. Clark had no further involvement or responsibility in Shinard-Bey's care, and Shinard-Bey does not identify his care at WCI as a specific aspect of his deliberate indifference claim. The Court therefore finds no evidence to support an Eighth Amendment claim against Clark.

As for Dr. Getachew, he approved the medications prescribed for Shinard-Bey's post-surgical needs, he requested physical therapy less than a week after Shinard-Bey's return to NBCI, and he permitted Shinard-Bey to have a follow-up visit with the neurosurgeon on November 18, 2021. During that visit and a separate follow-up visit with an NBCI physician on November 28, 2021, Shinard-Bey's surgical incision appeared to be well-healed. Dr. Getachew held a telemedicine appointment with Shinard-Bey on November 29, 2021. The record therefore reflects regular and appropriate monitoring and treatment for Shinard-Bey's post-surgical needs.

13

Construed liberally, Shinard-Bey appears to identify three specific alleged deficiencies in his post-surgical treatment. First, he alleges that his pain was not adequately treated, including that he did not receive Neurontin immediately after the surgery. Clark, however, has explained that it was not available at NBCI at that time, but she ensured that Shinard-Bey received another painkiller, Acetaminophen-codeine, until Neurontin became available. The medical records also reveal that he received pain medication throughout the period between the surgery and the filing of the Complaint, and that even if he continued to experience pain, during the medical visits he did not complain about pain in a manner that would support a claim that the medical providers generally, or Dr. Getachew specifically, acted with deliberate indifference by following their course of treatment for pain.

Second, Shinard-Bey appears to object to Dr. Getachew's decision, contrary to the recommendation of the neurosurgeon, to decline to require Shinard-Bey to be assigned to a handicap cell with handrails. Dr. Getachew has stated in his declaration that in his professional opinion, such a cell was not medically necessary. Although the evidence is not conclusive on whether such a cell was warranted, the medical records establish that Shinard-Bey was not in a wheelchair and was able to walk under his own power. There is also no evidence that Shinard-Bey was unable to use the bed and toilet in his cell, or that there were any specific incidents when he required assistance from others or fell because of the lack of handrails. Under these circumstances, Dr. Getachew's decision not to authorize a handicap cell does not demonstrate deliberate indifference to medical needs, and Shinard-Bey's objection to it amounts to a disagreement on medical treatment that is insufficient to establish an Eighth Amendment violation. *See Scinto*, 841 F.3d at 225.

Third, Shinard-Bey asserts that he was not provided with wound care and cleaning and appears to claim that the rash that became MRSA resulted from this lack of care. The medical records, however, show that Clark provided him with instructions on how to clean the surgical site, that it appeared to be healing well during the month after the surgery, and that it was not until December 6, 2021, over a month after his surgery, that Shinard-Bey complained of swelling near the incision. Dr. Getachew has also stated that, as a medical matter, the onset of the MRSA infection is not a sign of inadequate post-surgical treatment. Thus, the record does not provide sufficient evidence to show that the lack of additional care for the surgical incision constituted deliberate indifference. While the lack of medical treatment for the MRSA infection from December 2021 to January 2022 will be discussed separately below, where Dr. Getachew and other medical providers gave regular attention to Shinard-Bey's post-operative recovery, consistently provided pain and other medication, and scheduled follow-up visits and physical therapy, the Court concludes that the record, even viewed in the light most favorable to Shinard-Bey, does not support a conclusion that Defendants acted with deliberate indifference to his medical need for post-surgical care.

**B.   MRSA**

On the issue of the MRSA infection, Shinard-Bey has raised legitimate concerns about the delay in receiving medical treatment. He has asserted that the signs of a rash began developing in December 2021, and he submitted four different sick call or related requests for medical attention that month. In most of those instances, he was seen by a nurse, including on December 6, December 8, December 14, and December 23, and the nurses observed symptoms of a rash and made referrals for Shinard-Bey to see a physician or physician's assistant. However, none of those referrals resulted in actual consultations with a physician. After one sick call request on December

15

26, 2021, there appears to have been no visit with a nurse. Even after he filed an ARP on January 2, 2022, there was no immediate response. It was only after a January 15, 2022 sick call request that he was finally evaluated, and a physician's assistant immediately ordered appropriate medication and tests, which revealed that he had an MRSA infection. He then received a course of antibiotic treatment, and by February 14, 2022, it appeared that his infection had substantially resolved.

As the Warden of NBCI acknowledged in finding Shinard-Bey's ARP meritorious in part, Shinard-Bey was "not evaluated and treated in a timely manner regarding the rash that was reported." ARP at 1, Compl. Ex., ECF No. 1. The over one-month delay was not acceptable and had an adverse impact on Shinard-Bey during that time period, including causing him to lose sleep. The record, however, does not support a finding that the delay demonstrated deliberate indifference to Shinard-Bey's medical needs. His sick call requests generally resulted in examinations by nurses who fulfilled their responsibilities by referring Shinard-Bey to a medical provider. Although the failure of those referrals to result in appointments with physicians is unacceptable, there is no evidence that any physician was made aware of a referral and deliberately ignored it. Moreover, where the medical records reflect that Shinard-Bey received regular medical attention and treatment for his post-surgical needs, that once he saw a medical provider for his rash he received immediate, appropriate treatment for his MRSA infection, and that the delay was not so lengthy that this potentially serious infection caused severe and lasting harm, the Court does not find the subjective intent to disregard Shinard-Bey's medical needs that is necessary to establish an Eighth Amendment violation. In particular, there is no evidence that Dr. Getachew or Clark, the two defendants in this case, were specifically aware of Shinard-Bey's sick call requests as they

16

were received in December 2021 and January 2022 or were responsible for scheduling appointments with medical providers during that time period.

Because the Court concludes that there is no genuine issue of material fact on whether Defendants acted with deliberate indifference to a serious medical need, the Court will grant summary judgment on the Eighth Amendment claims asserted by Shinard-Bey. To the extent that Shinard-Bey's Complaint could be construed as asserting state law claims of medical malpractice and negligence, the Court declines to exercise supplemental jurisdiction and thus will dismiss such claims. *See* 28 U.S.C. § 1367(c)(3) (2018).

Finally, because the Court will grant the Motion as to all claims, it follows that injunctive relief is not warranted.

## IV.     Second Motion for Appointment of Counsel

Finally, with his memorandum in opposition to Defendants' Motion, Shinard-Bey has included a Second Motion for Appointment of Counsel. The Court previously considered and denied an earlier filed Motion for Appointment of Counsel. *See* ECF No. 5. Upon review of the Second Motion, and where Shinard-Bey has demonstrated that he can adequately present his claims, the Court finds no basis to reach a different conclusion at this point. Moreover, as discussed above, the Court finds that the Defendants' Motion will be granted. Accordingly, the Second Motion for Appointment of Counsel will be denied as moot.

## CONCLUSION

For the foregoing reasons, Defendants' Motion will be GRANTED. Shinard-Bey's claims under the ADA will be dismissed, and summary judgment will be granted in favor of Defendants on Shinard-Bey's Eighth Amendment claims. The Second Motion for Appointment of Counsel will be DENIED AS MOOT. A separate Order shall issue.

Date: March 17, 2023



THEODORE D. CHUANG
United States District Judge